The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Norvell Christopher FARLEY, Defendant-Appellant.

No. 83CA0954.

Colorado Court of Appeals, Div. II.

Oct. 24, 1985.

Rehearing Denied Nov. 14, 1985.

Certiorari Granted (Farley) Jan. 31, 1986.

Duane Woodard, Atty. Gen., Charles B.
Howe, Chief Deputy Atty. Gen., Richard H.

Forman, Sol. Gen., David R. Little, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Duane M. Kline, III, Deputy State Public Defender, Denver, for defendant-appellant.

STERNBERG, Judge.

Defendant, Norvell Christopher Farley, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree sexual assault and second degree kidnapping. His defense at trial was based on consent of the victim. Defendant's principal argument on appeal is that the trial court erred in admitting what he characterizes as testimony describing rape trauma syndrome. We affirm.

If the evidence is viewed in the light most favorable to the verdict, it appears that the defendant approached the victim at a convenience store gas pump at about 5:30 a.m. He initiated a conversation with her in which he suggested sexual activity. When she refused and tried to enter her car, defendant threatened her, put an unidentified hard object against her back, and ordered her to sit in the passenger seat. He then drove her car to a nearby residential neighborhood, parked, and subjected her to the sexual assault.

## I.

The People called as a witness during the case-in-chief a counselor employed by the Victim Services Unit of the Colorado Springs Police Department, who holds a special commission as a police officer. Although the record does not reveal that the counselor was offered or accepted as an expert witness before the jury, she testified on cross-examination that she held a bachelor of arts degree with a major in psychology and sociology, that she had received special training for her position with Victim Services, and that she had counseled approximately thirty alleged rape victims in the eighteen months of her employment. On direct examination the counselor testified she had talked with the victim for approximately three hours on the day of the assault, "several times" discussing with her what had happened.

Thereafter, the counselor testified as follows:

"Q: And during that time were you making observations as to her physical demeanor?

A: Yes, sir.

Q: And based upon your observations what was her state of mind?

... (objection made and overruled) ...

A: [The victim] was in a state of shock. She appeared physically slouched in her—in her stature. She spoke softly. When she did have eye contact with either I or the officer it was as if she was looking beyond us because of the shock she was experiencing at that time.

Q: Based upon your experience and with the thirty some other rape victims is that a typical response?

... (objection made and overruled) ...

A: Yes, it was typical.

Q: In what way?

A: Victims will go through several stages of emotional adjustment after a tramatic [sic] experience. One, is an initial stage of numbness, denial and anger and [she] was in that stage of shock.

Q: You said that you talked to her several times about what happened. Without going into detail was what she told you— were her stories consistent or inconsistent?

A: She appeared confused with reference to the chronological order of things and when she was given an opportunity to take some time and think about what transpired, she would correct herself and this is also something that is seen in victims, this confusion.

Q: Why is that?

A: Because of the shock that she's experiencing.

Q: That's typical?

A: Yes, sir.

. . . .

Q: Based upon your experience and your observations when you talked to [her]

was the way she talked and the way she looked and the way she answered your questions, was that consistent with being a rape victim?

A: Very consistent."

### A.

Defendant argues that this testimony amounts to a scientific diagnosis of rape trauma syndrome calculated to support the propositions that the victim was in fact raped and that the victim was telling the truth regarding her assault. Citing case law from other jurisdictions rejecting it as unreliable and unduly prejudicial, defendant urges that rape trauma syndrome testimony is inadmissible.

We do not view this testimony as rape trauma syndrome evidence. Instead, we hold that it was admissible as opinion testimony and was properly received under CRE 701 and 702.

A lay witness may testify in the form of opinions or inferences so long as the opinion or inference expressed is rationally based on his perceptions and is helpful to the jury in understanding the testimony or in determining a fact in issue. CRE 701. If, however, the opinion or inference expressed is beyond common experience or is based on knowledge of a scientific, technical, or specialized nature, the rules of evidence require the witness to qualify as an expert in the subject matter that is the basis of his testimony. CRE 702.

Rulings upon the qualification of a witness as an expert and upon the admissibility of evidence are matters committed to the sound discretion of the trial court, not to be disturbed absent a clear showing of abuse of discretion. *People v. Rubanowitz*, 688 P.2d 231 (Colo.1984); *People v. District Court*, 647 P.2d 1206 (Colo.1982).

Here, the testimony complained of was short and general. It was unencumbered by scientific terminology and the trappings of theory and consisted almost exclusively of the witness' observations of the demeanor of the victim. Significantly, the counselor did not state an opinion that

she either believed the victim or that she had been raped. In our view, therefore, the testimony given by the counselor constitutes neither rape trauma syndrome evidence, nor an impermissible statement that the counselor believed the victim was telling the truth.

### B.

Defendant contends that, even if the counselor's statements are not viewed as evidence of rape trauma syndrome, they require a special medical or psychiatric competence that she did not possess, and are therefore inadmissible as improper lay opinion under CRE 403, 701, and 702. He points specifically to two elements of her testimony. First, her statements that the behavior and demeanor of the victim were typical of and consistent with that of rape victims and, second, her statements that the victim was in a state of shock. We reject this contention.

The portion of the testimony complained of here did go further than observations by the counselor of the victim. The counselor stated that "victims will go through several stages of emotional adjustment after a traumatic experience" and that the victim was in "that state of shock." These statements may be construed to suggest a medical, scientific, or psychiatric authority beyond that of the counselor. We note that the court in an *in camera* hearing held that it had accepted the counselor as an expert on the behavior of rape victims, although this was not done before the jury. In any event, the fact that the expert may not have been formally qualified and accepted as an expert witness detracts from the authority behind her statements, rather than enhancing it. Indeed, it was the defendant in cross-examination who brought out the educational and training qualifications of the counselor.

When, as here, a witness has personally observed the physical activity of another, and summarizes his "sensory impressions thereof," the witness' conclusions are admissible. *Elliott v. People*, 176 Colo.

373, 490 P.2d 687 (1971); CRE 701. The counselor's testimony was solidly grounded in her experience and training, and her testimony was not a direct comment concerning the credibility of the victim. *See Wise v. Hillman,* 625 P.2d 364 (Colo.1981). *See also People v. Gallegos,* 644 P.2d 920 (Colo.1982).

▬ With respect to that portion of the counselor's testimony relating to the victim being in shock, we note that defendant's objections addressed only the counselor's statements concerning the typical nature of the victim's demeanor. Also, because nothing in defendant's motion for new trial raised the issue of the use of the term "shock," we consider it under the plain error standard. We conclude that admission of this testimony, does not constitute plain error. *See* Crim.P. 52(b).

## II.

During its deliberations, the jury sent a note to the court stating it could not reach a unanimous verdict. The court responded as follows: "Please reread your instructions and continue your deliverations." Defendant asserts this was plain error. We disagree.

▬ The instruction does not contain the clear exhortations to adhere to conscience that are present in the modified-Allen charge found at COLJI—Crim No. 38:14 (1983). *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Also, it does not contain any new statement as to the law of the case nor language that suggests that the jurors should surrender their individual views of conscience for the sake of returning a unanimous verdict. *Compare People v. Lewis,* 676 P.2d 682 (Colo.1984) and *Allen v. People,* 660 P.2d 896 (Colo.1983) *with People v. Shearer,* 650 P.2d 1293 (Colo. App.1982). Thus, the coercive impact upon the jury's deliberations which is the harm attendant to an *Allen*-type instruction is not present here. *See People v. Schwartz,* 678 P.2d 1000 (Colo.1984). Consequently, there is no plain error.

The other contentions of error are without merit.

The judgment is affirmed.

VAN CISE, J., concurs.

SMITH, J., dissents.

SMITH, Judge, dissenting.

In part I of its opinion the majority has determined that the testimony of a female police officer was admissible because it was not "Rape Trauma Syndrome Evidence" and by so doing has neatly avoided the difficult technical and legal questions involved in the use of such evidence. The majority approves the reception of this testimony on the basis that it was merely evidence of, and conclusions based upon, the observed behavior of the alleged victim by a lay person under CRE 701.

Not only does this holding ignore the traditional evidentiary rules and elevate form over substance, but of much greater concern to me is the fact that it opens wide the door for a method of proof, in cases of this type, which is questionable at best, even when offered by recognized behavioral scientists.

The term "Rape Trauma Syndrome" refers to a group of what seem to be common behavioral symptoms or characteristics observed in women who have actually been subjected to the trauma of "Rape" or, what our statute refers to as "sexual assault." In the context of a rape trial, evidence of studies purportedly demonstrating common behavioral characteristics, or "Rape Trauma Syndrome Evidence," coupled with evidence that the alleged victim demonstrated the same behavior, has sometimes been offered in an attempt to prove that the alleged victim has been subjected to rape as opposed to having engaged in consensual intercourse. That was *precisely* what was attempted here.

While several states have addressed the propriety of accepting Rape Trauma Syndrome evidence, only two have been cited to us as having permitted consideration of such evidence, namely: *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982); *State v.*

*Liddell,* 685 P.2d 918 (Mont.1984). However, even Kansas, which first permitted such testimony, has severely limited its rule in *State v. Bressman,* 236 Kan. 296, 689 P.2d 901 (1984).

In *Bressman* the Kansas Supreme Court rejected the testimony of an emergency room physician who had previously treated 30 to 50 purported rape victims and saw the alleged victim immediately following the incident. It held her testimony to be inadmissible because there was no showing (1) that she was trained as an expert in psychiatry or (2) that the basis for her conclusions were generally accepted in the field of psychiatry. Yet, in this case, the majority approves the same type of testimony, given by a minimally trained lay person, a police officer, under CRE 701 without requiring that the witness demonstrate *any* qualifications or expertise. Thus, even if we were to adopt a rule permitting the use of Rape Trauma Syndrome evidence, the testimony of the witness in this case falls far short of that required by the states that have adopted such a rule.

The Attorney General concedes that at least three states have expressly rejected the use of Rape Trauma Syndrome evidence to prove that a rape, in fact, occurred. *See People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984); *State v. Saldana,* 324 N.W.2d 227 (Minn. 1982); *State v. Taylor,* 663 S.W.2d 235 (Mo.1984). In each of these cases the court held that Rape Trauma Syndrome evidence fails to meet the so called *"Frye"* test of acceptance within the scientific community for the purpose of determining whether a woman has in fact been raped. The *"Frye"* test has been adopted in Colorado as the appropriate test for the admissibility of scientific evidence. *People v. Anderson,* 637 P.2d 354 (Colo.1981); *People v. Quintanar,* 659 P.2d 710 (Colo.App.1982).

The courts that have rejected such evidence have done so on the basis that the scientific literature indicates there is no typical rape victim. In as many as fifteen per cent of the cases a victim will develop no symptoms of the syndrome whatsoever. Burgess & Holstrom, *Rape Trauma Syndrome,* 131 Am.J. of Psychiatry 981 (1974). Moreover, these same symptoms may follow *any* psychologically traumatic event, not merely rape. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* § 236 (3rd Ed.1980). For these reasons testimony concerning Rape Trauma Syndrome or the "typical rape victim" cannot help the jury in its fact finding function; rather it can only mislead and prejudice it. *State v. Taylor, supra.*

Because not all victims of rape display Rape Trauma Syndrome symptoms and also because the same symptoms are often displayed as a result of other trauma, there is a logical inconsistency in the admission of such evidence in attempting to prove that a rape has, in fact, occurred. One cannot logically infer that a fact exists merely from a showing that other facts are not inconsistent with its existence. For example: a physician cannot determine that a patient is suffering from a specific disease merely because that patient's symptoms are not inconsistent with the existence of the disease—unless *only* patients who have the disease exhibit the symptoms.

Lest it be asserted that the admission of the testimony here was harmless—it should be noted that there was evidence concerning the critical issue of consent from which the jury could have found either way. Therefore the evidence which the majority here approves may well have been the determining factor on the ultimate issue of guilt or innocence.

Accordingly, I believe that the admission of the Rape Trauma Syndrome evidence here constituted reversible error, and thus, I would reverse and remand for a new trial.