The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

**Orion Leroy KOON,** **Defendant-Appellant.**

No. 84CA0171.

Colorado Court of Appeals, Div. II.

May 8, 1986.

Rehearing Denied June 26, 1986.

Certiorari Denied (People) Sept. 29, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia D. Jones, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Public Defender, Karen A. Chaney and Pamela Stross Kenney, Deputy Public Defenders, Denver, for defendant-appellant.

BABCOCK, Judge.

Defendant, Orion Leroy Koon, appeals the judgment entered on jury verdicts finding him guilty of two counts of first degree sexual assault. He alleges error in the admission of certain hearsay statements, in the admission of expert testimony concerning behavioral patterns of incest victims, and in the admission of expert testimony as to the truthfulness of the alleged victim. We reverse.

The defendant was charged with two sexual assaults in February 1983 on his then twelve-year-old stepdaughter. In addition to the stepdaughter's testimony, at trial the prosecution produced testimony by, among others, the mother of the stepdaughter's girlfriend, a police psychologist, a social worker, and a therapist. The testimony of these witnesses forms the basis of this appeal.

Defendant testified, denying any sexual contact with his stepdaughter. He claimed that her allegations were fabricated. The stepdaughter's mother and grandmother testified that the stepdaughter was an habitual liar.

I.

Because the following evidentiary issues were not brought to the attention of the trial court, they may be considered only under the plain error standard. *See* Crim.P. 52(b); CRE 103(d).

A.

Defendant first contends that testimony by the police psychologist about behavioral patterns of child incest victims, and the supporting testimony by the social worker that the stepdaughter fit these patterns, was inadmissible. He argues that this evidence is not admissible under CRE 702, that it unduly corroborated the child's testimony, and that its probative value was outweighed by its prejudicial effect. Under the circumstances of this case, we disagree.

The police psychologist was qualified without objection as an expert in the field of victim psychology. She testified about certain specific behavioral patterns which are unique to child incest victims, and to the families of such victims. The social worker testified concerning observations she made of the stepdaughter's behavior and that her behavioral characteristics were the same as those unique characteristics of a child incest victim as described by the police psychologist.

Rulings on the admissibility of expert testimony are committed to the sound discretion of the trial court. *See People v. Farley,* 712 P.2d 1116 (Colo.App.1985) (cert. granted January 31, 1986). If a qual-

ified expert offers testimony that the reaction of one child is uniquely similar to the reaction of most victims of familial child abuse, and, if believed, this testimony would assist the jury in deciding whether a sexual assault occurred, it may be admitted. *See State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983); *State v. Haseltine,* 120 Wis.2d 92, 352 N.W.2d 673 (Wis.App. 1984); *State v. Myers,* 359 N.W.2d 604 (Minn.1984); *cf. People v. Farley, supra.*

We recognize a distinction between Rape Trauma Syndrome evidence and evidence about certain specific behavioral patterns which are unique to child incest victims and to their families. Although the issue has not been resolved in Colorado, *see People v. Farley, supra,* other jurisdictions have generally held Rape Trauma Syndrome evidence inadmissible to determine whether an adult woman was in fact raped. *See State v. Saldana,* 324 N.W.2d 227 (Minn.1982). However, in cases involving child incest victims, upon proper foundation, evidence such as that introduced in this case is uniformly admitted. *See State v. Myers, supra.*

When the credibility of a witness has been attacked, opposing counsel may present evidence of "truthful character," but supporting evidence of the truthfulness of the witness on a particular occasion is prohibited. CRE 608(a); *Tevlin v. People,* 715 P.2d 338 (Colo.1986); *People v. Koon,* 713 P.2d 410 (Colo.App.1985). Child incest pattern testimony may incidentally give rise to an inference that a victim is or is not telling the truth about the specific incident. *See State v. Haseltine, supra.* However, this fact alone is insufficient to deny admission of the evidence, because expert testimony generally tends to bolster or attack the credibility of another witness. *State v. Myers, supra; See State v. Middleton, supra.*

Here, the police psychologist was qualified without objection as an expert in the field of incest victim psychology. She rendered no opinion whether the stepdaughter was truthful in her report of the assaults, or whether the stepdaughter was a victim

of child incest. Under these circumstances, we conclude that her testimony was admissible in the discretion of the trial court, and that its probative value is not outweighed by its prejudicial effect. *See* CRE 403; *People v. Lowe,* 660 P.2d 1261 (Colo.1983). *Cf. People v. Farley, supra.* Similarly, the social worker's testimony merely stated that the stepdaughter's observed behavior was consistent with the unique child incest patterns described by the police psychologist. This testimony was also admissible. *See State v. Middleton, supra.*

### B.

■ Defendant next asserts that the trial court erred in admitting expert opinion testimony that the stepdaughter was truthful. We disagree as to the social worker's testimony but agree as to the therapist's testimony.

The social worker was called during the prosecution's case-in-chief, and during her testimony, the following colloquy occurred:

"D.A.: Do you find her to be a truthful person?

"SOCIAL WORKER: In general?

"D.A.: In general?

"SOCIAL WORKER: In general she is a truthful person."

The therapist was called at the end of the trial to rebut defendant's express charge that the stepdaughter had fabricated her claims. After testifying to statements made to her by the stepdaughter about the alleged sexual assault, the prosecutor inquired, "Do you find her truthful, in general?" To which the therapist replied:

"Yes, yes. She has been really truthful with me. In her situation with me I can't think of anything where she hasn't been truthful."

Once a witness' credibility has been attacked, as the stepdaughter's was here, the prosecution may present evidence of truthful character. *See* CRE 608(a); *Honey v. People,* 713 P.2d 1300 (1986). However, neither a lay nor expert witness may give opinion testimony that a witness was tell-

ing the truth on a specific occasion. *Tevlin v. People, supra; People v. Koon, supra.*

Here, the social worker's testimony was directed to the stepdaughter's general character for truthfulness, and thus, it was admissible under CRE 608(a). *See Tevlin v. People, supra; Honey v. People, supra; People v. Koon, supra.* Although the form of the question was not objectionable, the therapist's opinion of the stepdaughter's truthfulness, on the other hand, was inadmissible because it referred to truth on specific occasions. *See Tevlin v. People, supra; People v. Koon, supra.*

### C.

 Defendant also argues that the therapist's statement, "I think it happened and she knows it happened and that is what mattered" was inadmissible evidence that the sexual assault occurred. We agree.

This statement was made during questioning of the therapist by the prosecution about inconsistencies in dates in the stepdaughter's diary. It directly asserted the therapist's opinion that the stepdaughter's claims were true and accurate, and as such, it is inadmissible. *See People v. Gallegos,* 644 P.2d 920 (Colo.1982). Further, expert opinion that a rape or sexual assault actually occurred is inadmissible because the potential for unfair prejudice from opinions of this type is compounded by the aura of special reliability and trustworthiness which attaches to expert testimony. *See State v. Saldana, supra; cf. People v. Farley, supra.*

### D.

 Defendant contends that the therapist's testimony concerning the stepdaughter's truthfulness, and her further opinion testimony that the sexual assault occurred, constitutes plain error. We agree.

No definition of plain error will fit every case. *People v. Barker,* 180 Colo. 28, 501 P.2d 1041 (1972). However, plain error may be found where an "obvious and substantial," or "grave," error occurs which seriously affects the substantial rights of the accused. *People v. Barker, supra.* A showing of plain error requires that defendant "demonstrate not only that the record reveals that [the error] affected a substantial right but that also the record reveals a reasonable possibility that the error contributed to his conviction." *People v. Rubanowitz,* 688 P.2d 231 (1984).

Here, there was no physical evidence of, or third-party eyewitness testimony to, the alleged sexual assaults. Hence, credibility was the central issue to be resolved by the jury in determining whether the sexual assaults occurred. The therapist's testimony was directed at this core issue. Further, the therapist was the last witness to testify at trial and the timing of this testimony undoubtedly increased its impact on the jury. Moreover, the testimony was aimed at rehabilitating the stepdaughter's credibility, and the therapist's status as an expert witness augmented her testimony with an aura of trustworthiness and reliability. Finally, the evidence of guilt produced in this case is not overwhelming as it was in *Tevlin v. People, supra.* Under these circumstances, we conclude that the two statements, taken together, substantially and seriously affected the defendant's right to a fair trial and there exists a reasonable possibility that the error contributed to his conviction. The judgment of conviction must, therefore, be reversed.

### II.

 Because a new trial is necessary, we address defendant's remaining contentions which are likely to arise on retrial.

Defendant asserts that the application of § 13–25–129, C.R.S. (1985 Cum.Supp.) to allow the admission of the stepdaughter's hearsay statements to the police psychologist violated constitutional prohibitions against ex post facto laws. Although § 13–25–129 was enacted shortly after the time of the alleged offenses, and before trial, we conclude that there was no constitutional violation as applied to defendant.

Unless harsh or oppressive, a statute which changes the rules of evidence after the occurrence of an offense so that previ-

ously inadmissible evidence is admissible is not an ex post facto law. *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898); *Kolkman v. People*, 89 Colo. 8, 300 P. 575 (1931). Such statutes do not attach criminality to any act which was innocent when done, do not aggravate or provide a greater punishment for a crime committed prior to the statute, and do not alter the degree or lessen the amount of proof which was necessary for conviction when the crime was committed. *Thompson v. Missouri, supra; see Myers v. District Court*, 184 Colo. 81, 518 P.2d 836 (1974).

Section 13–25–129 addresses the obvious problem of obtaining a complete statement from a child, especially a very young child, at trial. The statute allows hearsay statements of the child to be admitted if the court finds that the time, content, and circumstances of the hearsay statement provide sufficient safeguards of reliability. *See* § 13–25–129(1)(a), C.R.S. (1985 Cum. Supp.). We conclude that allowing hearsay testimony of this type promotes, rather than hampers a fair trial. *Cf. W.C.L. v. People*, 685 P.2d 176 (Colo.1984). Therefore, we hold that application of the statute to defendant is not harsh or oppressive, and thus, its use is not barred on the basis that it constitutes an ex post facto law.

### III.

■ Defendant next argues that the trial court erred in admitting the therapist's testimony concerning statements made to her by the stepdaughter. The trial court admitted the testimony as prior consistent statements under CRE 801(d)(1)(B). We find no error.

The therapist's testimony was given in rebuttal to defendant's assertion that the stepdaughter was an habitual liar who fabricated the sexual assault charges. The therapist related statements about the sexual assaults made to her by the stepdaughter during therapy after the stepdaughter reported the assaults and was removed from the home.

Defendant relies on decisions from several federal jurisdictions, including *U.S. v. Quinto*, 582 F.2d 224 (2d Cir.1978), for the proposition that CRE 801(d)(1)(B) contains an implied condition that the prior consistent statement must have been made *before* the time that the supposed motive to falsify arose. He argues that the stepdaughter fabricated her claims from the beginning, and thus, her prior consistent statements were made *after* the supposed motive to falsify arose. We do not read such an implied condition into our rule.

Under the plain language of CRE 801(d)(1)(B), the statement is not hearsay so long as: The declarant testifies at trial and is subject to cross-examination concerning the statement; the statement is consistent with his testimony at trial; and the statement is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. CRE 801(d)(1)(B); *see People v. Graham*, 678 P.2d 1043 (Colo.App.1983). The rule is silent as to when the consistent statement must have been given. We hold that the rule encompasses statements made both before and after the time of the alleged impropriety or the time when the supposed motive to falsify arose. *Cf. People v. Graham, supra; see generally*, J. Quinn, *Hearsay in Criminal Cases Under the Colorado Rules of Evidence: An Overview*, 50 Univ.Colo.L.Rev. 277 (1979). The time when the statement was made goes to the weight of the evidence, not its admissibility.

However, the fact that the statement is nonhearsay under CRE 801(d)(1)(B) does not end the inquiry as to its admissibility. The statement must also be relevant under CRE 401, and its probative value must not be substantially outweighed by the danger of unfair prejudice or the needless presentation of cumulative evidence. *See* CRE 403; *U.S. v. Hamilton*, 689 F.2d 1262 (6th Cir.1982).

Under CRE 403 analysis, the probative value of prior consistent statements made *before* the motive to fabricate arose would be greater than the value of a statement

made *after* the motive to fabricate arose. *See U.S. v. Hamilton, supra; see generally*, J. Weinstein & M. Berger, *Weinstein's Evidence*, § 801(d)(1)(B) [01] (Vol. 4, 1985). As such, this factor should be considered by the trial court in balancing the probative value of the evidence against the danger of unfair prejudice. *See* CRE 403.

Here, the stepdaughter was present and testified at trial, and she was available for cross-examination concerning the statements. Further, the statements were consistent with her testimony at trial, and were offered to rebut defendant's express charge of improper motive. Therefore, we conclude that the foundational elements of CRE 801(d)(1)(B) were satisfied in this case.

The trial court admitted the statements over defendant's objection that their admission would be cumulative. However, defendant does not argue on appeal that the trial court abused its discretion in admitting cumulative evidence, and we find no such abuse. Moreover, implicit in the trial court's ruling admitting the evidence is its determination that the probative value outweighs its prejudicial effect. We find no error in the trial court's ruling.

## IV.

Defendant's final contention is that it was error for the trial court to admit, as an excited utterance, the stepdaughter's hearsay statement made to her girlfriend's mother (Cox). If this evidence is offered on retrial it should not be admitted.

Hearsay statements are admissible under the excited utterance exception of CRE 803(2) if: (1) There was some occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative; and (2) the statement of the declarant was a spontaneous reaction to the occurrence or event and not the result of reflective thought. *W.C.L. v. People, supra.*

Here, Cox, after learning about the alleged assaults from a diary supplied to her daughter by the stepdaughter, went to defendant's home "to get [the stepdaughter] out of the house." Upon arriving at de-fendant's home, she noticed that the stepdaughter was "very upset." After she contacted the stepdaughter, the stepdaughter first went downstairs to where defendant was to persuade him to let her leave with Cox. However, defendant refused, telling her that he might be called to work soon and that, in that event, she would have to be home to babysit her siblings. When the stepdaughter reported to Cox that her father had denied her request to leave, Cox then spoke with defendant and was able to persuade him to let the stepdaughter go for a half hour under the pretext of attending a short surprise party.

The contested hearsay statement occurred after the stepdaughter had left the house and as she was getting into Cox's car. Cox testified that the stepdaughter said, "I can't go back there because he is going to do it again as soon as [his friend] is gone." The trial court admitted this statement under the excited utterance exception to the hearsay rule.

Although the stepdaughter may have been excited at the prospect of leaving the home, we conclude that the statement made while getting into the car was not in response to a startling event or occurrence within the meaning of CRE 803(2). Here, the nature of the occurrence was not such as to render thought processes inoperative. Instead, the thought processes of both the stepdaughter and Cox were fully operative in devising a way to get the stepdaughter out of the house without defendant becoming suspicious as to the reason. Under these circumstances, there was no "condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." *See People in Interest of O.E.P.*, 654 P.2d 312 (Colo.1982) (quoting from Fed.R.Evid. 803(2) (Advisory Committee Note)).

Further, the requirement of a spontaneous reaction to the occurrence was not met here. *See W.C.L. v. People, supra.* The statement was made after the stepdaughter had left the house, and the delay between the alleged startling occurrence and

the declaration was not adequately explained. Moreover, the stepdaughter, at almost thirteen years of age, does not fall within the exception to the temporal proximity requirement created by the Supreme Court for very young children who lack the capacity to fabricate and who are not adept at reasoned reflection. *See People in Interest of O.E.P., supra; People v. Roark,* 643 P.2d 756 (Colo.1982).

Because the foundational requirements of CRE 803(2) were not satisfied in this case, we conclude that the trial court erred in admitting the hearsay statement as an excited utterance. *See W.C.L. v. People, supra; People in Interest of O.E.P., supra.*

Our holding makes it unnecessary to address defendant's claim of prosecutorial misconduct.

The judgment of conviction is reversed, and the cause remanded for a new trial.

SMITH and STERNBERG, JJ., concur.