24CA0280 Peo v Quintanilla 04-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0280
Arapahoe County District Court No. 21CR2203
Honorable Shay Whitaker, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jesse Ivan Quintanilla,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Harris and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

The Law Offices of Colin Bresee, M. Colin Bresee, Gregory Huckaby, Denver, Colorado, for Defendant-Appellant

¶ 1     A jury found defendant, Jesse Ivan Quintanilla, guilty of two counts of sexual assault on a child for sexually abusing his girlfriend's daughter.  Quintanilla appeals his conviction, arguing that the trial court reversibly erred by admitting generalized expert witness testimony.  We disagree and therefore affirm the judgment of conviction.

## I.     Background

¶ 2     In 2021, the victim told her therapist that Quintanilla — who lived with the victim, her mother, and her sister — had made her touch "something squishy" that was "connected to [Quintanilla's] body."  That disclosure led to a police investigation, after which the prosecution charged Quintanilla with three counts of sexual assault on a child as part of a pattern of abuse.

¶ 3     At trial, the victim testified that when she was in second grade, Quintanilla came into her room "in the middle of the night," carried her to a bathroom, and locked the door.  Once there and with the lights off, the victim said that Quintanilla "grab[bed]" her hand and made her "touch the squishy thing" that was connected to him "between his legs."  Quintanilla then carried her back to her room and told her "not to tell anybody what happened."  The victim said

1

this happened many times, but that she didn't tell anyone because she was scared.

¶ 4 Quintanilla didn't testify. His counsel defended on the theory that the victim "made up this story," and pointed in closing argument to, among other things, her delay in reporting the alleged abuse, inconsistencies in her story, and her demeanor when testifying.

¶ 5 After the prosecution dismissed one of the sexual assault counts, the jury found Quintanilla guilty of the remaining counts.

¶ 6 The trial court sentenced Quintanilla to two consecutive indeterminate terms of twelve years to life in prison.

## II. Analysis

¶ 7 Quintanilla argues that the trial court erred by admitting the testimony of Suvi Miller, a generalized child sexual assault expert witness. We aren't persuaded.

### A. Additional Background

¶ 8 Before trial, the prosecution endorsed Miller as a generalized expert witness and provided a general summary of her proposed

testimony.[1]  Quintanilla moved to exclude Miller as an expert under CRE 702, CRE 403, and CRE 608 and alternatively requested a hearing under *People v. Shreck*, 22 P.3d 68 (Colo. 2001).

¶ 9     At a motions hearing, the court denied the request for a *Shreck* hearing.  As to whether Miller's testimony fit the case, the court recognized that Miller was qualified as an expert and that generally her testimony was helpful and provided "valuable" information to the jury.  The court also agreed that Miller's testimony "needs to be tailored based on what takes place in the trial."

¶ 10     The court ordered the prosecution to "comb through" Miller's proposed testimony and narrow it down to topics likely to emerge at trial, recognizing that the court is "a little handcuffed this far from trial in being able to say . . . what we anticipate would be relevant."  The court then noted, "[I]f there's continued concerns, we can have a more narrow discussion about [Miller's proposed testimony], and . . . if we need to have additional discussion after the victim['s]

---

[1] Miller's "Summary of Proposed Testimony" and "source list" are not part of the appellate record.

testimony, then we can do that as well." The court also ordered the prosecution to produce Miller's "source list."

¶ 11    At trial, over defense counsel's objection, the court qualified Miller as a "child sexual abuse, behavior and disclosure expert." Miller then testified that children sometimes wait before disclosing sexual abuse and that disclosure may be gradual. She explained factors that may lead to delayed reporting, testified about victim demeanor, and discussed issues victims might have with describing the sequencing and timing of their abuse. Miller also explained to the jury that her role was "to provide general information . . . about how children may disclose," but "no specifics to the case."

¶ 12    Defense counsel did not object to the relevance of any specific testimony or argue that any testimony did not fit the facts of the case, but counsel did vigorously cross-examine Miller.

B.    Legal Principles and Standard of Review

¶ 13    Expert witness testimony is governed by Rule 702 and is admissible when (1) the scientific principles at issue are reasonably reliable; (2) the expert is qualified to offer the testimony; (3) the testimony is helpful to the jury; and (4) the testimony's probative value is not substantially outweighed by the danger of unfair

prejudice, confusion, or misleading the jury. *People v. Cooper*, 2021 CO 69, ¶ 47; *see* CRE 702, 403.

¶ 14 "We review a trial court's admission of expert testimony for an abuse of discretion and will reverse only when that decision is manifestly erroneous." *Cooper*, ¶ 44 (citation omitted).

### C. The Trial Court Properly Qualified Miller

¶ 15 We reject Quintanilla's claim that the court abused its discretion by qualifying Miller as an expert in child sexual abuse.

¶ 16 A witness may be qualified to offer expert testimony based on one or more of the five factors in Rule 702 — knowledge, skill, experience, training, or education. *Huntoon v. TCI Cablevision of Colo., Inc.*, 969 P.2d 681, 690 (Colo. 1998).

¶ 17 To qualify an expert witness, "[a] trial court need not conduct a *Shreck* hearing if there is sufficient information to make an admissibility determination without one, but [it] must nonetheless address the testimony and make specific findings regarding its challenged admissibility." *Kutzly v. People*, 2019 CO 55, ¶ 11. However, if "Colorado has already properly accepted the basis of the expert's testimony," failing to make specific findings doesn't rise to an abuse of discretion. *Id.*

¶ 18    As we understand it, Quintanilla doesn't argue that Miller wasn't qualified but instead claims that the trial court erred by failing to make "any findings on the record regarding . . . Miller."

¶ 19    But that's not accurate. Based on its experience with Miller, the court specifically found that Miller "is an expert [and] that she does provide information that is valuable to the jury." This finding implicitly recognizes that the proposed testimony is reliable. *See People v. Ruibal*, 2015 COA 55, ¶ 24 (concluding that when the court overruled the defendant's objection to the expert witness' testimony without a specific reliability finding, it "implicitly determined that the . . . expert testimony was based on a reliable scientific principle"), *aff'd*, 2018 CO 93; *cf. People v. Yachik*, 2020 COA 100, ¶ 50 (requiring more specific findings where the trial court found only that the expert "meets the qualifications").

¶ 20    And even if the trial court's findings should have been more robust, Colorado courts have "consistently upheld the admission of '[e]xpert testimony about the general behavior of sexual assault victims.'" *People v. Rail*, 2016 COA 24, ¶ 64 (alteration in original) (citation omitted), *aff'd on other grounds*, 2019 CO 99, *and abrogated on other grounds by*, *Bock v. People*, 2024 CO 61; *see also*

*People v. Whitman*, 205 P.3d 371, 383 (Colo. App. 2007) ("We conclude the trial court did not abuse its discretion by finding that an expert's explanation of possible child behaviors and reactions would be helpful to the trier of fact and was admissible here.").

¶ 21    To the extent Quintanilla generally contends that the court erred by denying his request for a *Shreck* hearing, we disagree. When, as here, the court "already has sufficient information to make specific findings under *Shreck*, a hearing is not necessary." *People v. Wilson*, 2013 COA 75, ¶ 23.

¶ 22    And, finally, Quintanilla also seems to argue that by denying him a *Shreck* hearing, the court failed to realize that the prosecution provided him with an older version of Miller's source list. As best we understand, he says that this hindered his cross-examination. But Quintanilla doesn't explain how his cross-examination was prejudiced. At any rate, the court later found that the prosecution had committed a discovery violation by providing the older source list and instructed the jury that the prosecution had not complied with its disclosure duty. Quintanilla doesn't

explain why that sanction was insufficient to cure any potential prejudice.[2]

¶ 23 For all these reasons, we conclude that the court didn't abuse its discretion by qualifying Miller as an expert in child sexual assault and declining to hold a *Shreck* hearing.

### D. Miller's Testimony Was Relevant and Not Unfairly Prejudicial

¶ 24 We next reject Quintanilla's contention that the court erred by allowing irrelevant and unfairly prejudicial testimony.

¶ 25 While the parties disagree about the extent to which Quintanilla preserved these objections, we needn't resolve this dispute because we conclude that the court did not abuse its discretion by admitting Miller's testimony.

¶ 26 With respect to relevance, a generalized expert's testimony is helpful if it "fits a case" by having a sufficient logical connection to the factual issues. *Cooper*, ¶ 52. But "each aspect of such

---

[2] Quintanilla also suggests that the trial court erred by preventing him from cross-examining Miller on a 2017 admonition against her. But Quintanilla was allowed to substantially question Miller on the incident. Regardless, he doesn't explain how the court erred or how the error impacted the trial. *See People v. Relaford*, 2016 COA 99, ¶ 70 n.2 ("We do not consider bare or conclusory assertions presented without argument or development.").

8

testimony need not match a factual issue." *Id.* at ¶ 53. And with respect to generalized expert testimony, "the fit inquiry must be flexible." *Id.*

¶ 27    Miller testified about delayed disclosure, factors affecting disclosure, victim demeanor, and the way victims sequence events. All this testimony was logically connected to the facts in evidence and helpful to the jury to understand the evidence. The testimony helped explain counterintuitive victim behavior such as why a child victim may delay reporting abuse, why descriptions of the abuse might be inconsistent, and why a child victim's demeanor might be different than expected. *See id.*; *see also People v. Koon*, 724 P.2d 1367, 1370 (Colo. App. 1986) (admitting expert testimony about how the child sexual assault victim's behavior "was consistent with the unique child incest patterns").

¶ 28    Indeed, Quintanilla doesn't seriously argue that these topics didn't fit the case. He instead focuses on Miller's discussion of gradual reporting, asserting that she "invited the jury to speculate that [the victim] was more affected and hurt than was shown by her literal testimony." While it's true that this case didn't involve a gradual disclosure, a generalized expert's testimony needn't

perfectly match the facts of the case. *See Cooper*, ¶ 53. That's because a generalized expert "seeks to inform the jury about generic concepts or principles without knowledge of the facts"; thus, "it is almost inevitable that parts of such testimony will not be logically connected to the case." *Id.*; *see People v. Coons*, 2021 CO 70, ¶ 4 ("[E]ach aspect of [generalized expert witness] testimony need not match a factual issue.").[3]

¶ 29 Nor are we persuaded that the probative value of Miller's testimony was significantly outweighed by unfair prejudice. Contrary to Quintanilla's assertion, Miller did not "provide[] the jury with scenarios that mimicked and paralleled the family dynamic in the Quintanilla household." Miller clearly stated she was testifying to "no specifics to the case," and she offered no testimony about whether Quintanilla had sexually assaulted the victim. Rather, she largely limited her testimony to a general discussion of delayed reporting and child abuse victim behavior which was helpful to the

---

[3] In his reply brief, Quintanilla argues that the prosecution didn't comply with the court's order to limit Miller's testimony. Even assuming Quintanilla properly raised that contention in his opening brief, we conclude that Miller's testimony was logically connected to the facts and not unduly prejudicial. We therefore do not address the pretrial ruling.

jury. *See Rail*, ¶ 74 (rejecting contention in similar case where Miller also testified that her testimony was unfairly prejudicial).

¶ 30    We therefore conclude that Miller's testimony was relevant and not unfairly prejudicial.[4]

    E.    Miller Didn't Improperly Bolster the Victim's Credibility

¶ 31    And, finally, we reject Quintanilla's claim that Miller's testimony improperly bolstered the victim's credibility.

¶ 32    While expert testimony isn't permitted to bolster a victim's credibility, *see Cooper*, ¶ 95, a generalized expert may testify about child assault victim behavior and demeanor, *see Rail*, ¶ 64.

¶ 33    That's what Miller did in this case.  Though Quintanilla suggests otherwise, Miller never testified about the victim or opined about the victim's credibility.  She never offered statistics on the rates of false abuse claims.  She didn't opine that children as a

---

[4] Quintanilla also frequently references the "lengthy [and] narrative nature" of Miller's testimony.  But the bulk of her testimony was offered in response to cross-examination.  Defense counsel never objected to any of Miller's responses as improper narrative testimony, and Quintanilla doesn't explain how the trial court plainly erred by allowing the responses.  *See People v. Trujillo*, 2015 COA 22, ¶ 8.  We therefore do not consider the nature of Miller's responses.  *See People v. Lowe*, 2021 CO 51, ¶ 20 n.4 (declining to address "undeveloped assertion of error lacking support in legal authority").

class are always truthful. Rather, she testified about general child abuse reporting and victim behavior and certainly not, as Quintanilla claims, about "the importance of believing children." *See id.* at ¶ 73 (rejecting a claim that Miller improperly bolstered the victim's testimony under similar circumstances).

¶ 34 That makes this case different from *People in Interest of G.E.S.*, 2016 COA 183. In that dependency and neglect case, a division of this court reversed an adjudication and dispositional order. The division concluded that the erroneous admission of polygraph evidence was not harmless for several reasons, including that an expert in child sex abuse had specifically testified about the credibility of the victim's initial outcry. *Id.* at ¶¶ 31, 34. Unlike the expert in *G.E.S.*, Miller never testified that the victim's outcry was credible.

¶ 35 Because Miller testified generally without implying that the victim's allegations in this case were truthful, any bolstering effect on the victim's credibility was incidental. *See People v. Cernazanu*, 2015 COA 122, ¶ 20 (generalized expert opinion testimony is admissible even if it incidentally bolsters the victim's testimony).

¶ 36    We therefore conclude that the trial court did not err by admitting Miller's testimony.

## F.    Cumulative Error

¶ 37    Because we disagree that the trial court committed any errors, let alone multiple errors, we necessarily reject Quintanilla's claim that reversal is warranted under the cumulative error doctrine. *See Howard-Walker v. People*, 2019 CO 69, ¶ 24.

## III.    Disposition

¶ 38    The judgment of conviction is affirmed.

JUDGE HARRIS and JUDGE MOULTRIE concur.